Good morning, Your Honors. My name is Karen Bucher. I represent Kenneth Spangle, the appellant. And with the Court's permission, I'd like to request two minutes for a rebuttal. This is the case where the defendant is convicted of sending a threatening letter to his probation officer. And in his appeal, Spangle argues that the Court erred in enhancing his sentence by six levels under Guideline Section 2A6.1. This section provides for a six-level increase if there's evidence that the defendant intended on actually carrying out the threat. And in this case, the district court found certain items in Mr. Spangle's cell, some written lists, as evidence that he was going to carry out this threat. But in this circuit, in order for this section to apply, the conduct must be substantially and directly connected to the offense. And what was found in the cell was a list. He called it the hit list. But on this hit list were names of numerous people, like Johnny Cochran, Judge Lanzito, Shaquille O'Neal, unknown lawyers, psychiatrists, all sorts of people. And there was nothing on the document that showed that he was going to ---- What does that prove? I don't understand. I mean, if you looked at John Hinckley's list, he might have seen President Reagan or Jody Foster or who knows what. But what difference does it make who these people are on the list? There's nothing on the list that shows that he was going to harm them. And what the critical ---- Well, no. But the importance is that he's compiling a list of people that he has some perceived grudge against. There's a lot of people on that list. I mean ---- Well, he has a long list. But isn't the real question what is meant by conduct. In other words, this statute doesn't ---- this guideline doesn't say if there was an intent to carry out the threat up by six. It says if there was conduct evidencing an intent, buff it up by six. And the cases all seem to have something kind of like almost an attempt. In other words, that there was something done to forward some physical activity. And so this would be something of an expansion, wouldn't it? I mean, he did something. He made lists. He didn't only make lists of people, but he made lists of how to find people, and he had lists about guns, and he had various pieces of paper, but all he had was pieces of paper. So the question is, is that what's meant by conduct evidencing intent? No. The cases that have upheld this guideline was when the defendant did something more active, such as actually going to Washington, D.C. with a gun regarding the President, and actually going to the school where the President was, where the defendant actually shot out some windows of the victim's car. Another situation was when the defendant actually beat up the victim and actually ruptured the air drum. This was the kind of cases that ---- where this guideline section has been upheld. And I think the key issue here is that in this circuit, the circuit has found that the critical issue in analyzing these type of cases is whether the defendant likely would have carried out the threat, and this is the Hines case at 26th at 3rd at 1474. And what's key in this case, the district court made a specific finding that Mr. Spangl would have not carried out this threat. The district court said, I also believe that the hit list and the other subject found in Mr. Spangl's cell do show an intent, perhaps a fleeting intent, but not an intent that could have carried forward to the actual action, but decidedly an intent to carry out the threat. And I think that finding alone is ---- makes reversible error in this case. And ---- And does Judge Kosinski also rely on the other letter? Yes, he did. There was another letter that was sent out about 18 months prior, but that letter was not found to be a threat. In reading that letter, there's nothing in that letter that shows that he was going to carry out the threat. Well, let's suppose it was. Suppose the other letter was definitely a threat. But would that meet the statute? Would that be conduct evidencing an intent to carry out the threat if it was just another threat? Well, not based on the case law that I have read that is upheld. The cases I just cited, they're all in my brief. I sort of listed them in survey form. But the Ninth Circuit case is USA v. Hines. And what's interesting is that the government, at least by my reading, doesn't appear to contest this argument. Their argument is focusing on the proper standard of review. Let me ask you. I'm puzzled by Judge Kosinski's finding, too, because it seems maybe on the face of it contradictory. He seems to say there was an intent at the time the letter was mailed, but I don't think you would have carried it out. Is that a fair reading of what he was saying? When he was reviewing the evidence that he used to enhance by six levels, it was that evidence that he's, by my reading, that was a fleeting intent. Intent at the time he wrote it? He didn't specify at the time the letter was written. He was focusing on the items that were found in the cell. Is my interpretation of his ruling correct that that's what he was getting at? Ultimately. At the time he wrote the list, this guy had some intent to carry it out or he wouldn't have been compiling the list, but he doesn't think that in fact when he got out he would do these things. Is that what Judge Kosinski was saying? I'm not quite sure, because that list was, I believe, prepared prior to the second letter being sent out. How do we know that? Well, the second letter was sent out on May 12th. The search was on May 29th. And there's nothing in the record that shows exactly when they were written. What difference would it make anyway? It would show the intent of whether he was going to carry out something. I mean, if first he formulated the plan and made his list and then sent the letter, what difference does it make if he did just the opposite, sent the letter and then made his list? No, I think it probably doesn't make a difference, but I think what the issue is whether or not that evidence is enough to show that he would have actually gone out and carried out a threat. I guess that's what I'm trying to focus on is if Judge Kosinski finds, I don't think this guy would have done it. What's the import of that? Is that the end of the ballgame? I believe so, because the circuit has found that that's the critical issue. Even if at the time he wrote the letter, at that time, he did intend to carry it out? Well, you'd have to have evidence showing that he was going to carry it out. Well, that's what Judge Kosinski found. I mean, right or wrong, he found that these lists evidences his intent at the time. A fleeting intent. Well, how much intent do you need? I'm looking at the Thomas cases in the Seventh Circuit. This case is pretty much on a square on that one, isn't it, in terms of Judge Kosinski? I mean, leaving aside these comments about why he didn't really think he was going to carry it out, but in terms of what the evidence was that he did intend to carry it out and my concern about what conduct means, in Thomas, we were talking about letters and plans, and we weren't talking about anything more than that. I'm sorry. I don't have that case. No? Okay. I apologize for that. All right. And if there's any more questions regarding that issue, the issue regarding the correct standard of review, the Court should have used the clear and convincing standard instead of the preponderance of evidence standard in his finding that the evidence in the cell was an intent to commit the threat. Do you want us to send this back again? Well, yes, Your Honor. How many times has it been back? This would be the fourth. The jury waiver issue. Mr. Spangol. Can I just get back to the standard of review? I mean, the sentence is not doubled, which is a critical factor in deciding whether we're going to use the heightened standard of review. It almost doubles the sentence. Almost, but it doesn't. I mean, that's the rule. It's got to double it. No, Your Honor. The case law says that neither factor is a bright-line rule, and you look at the whole case as a whole. And what I think is key in this case is that when the Court found Meade's finding under the preponderance of the evidence standard, the Court found the question a close one. And also, the government also stated that the evidence was not overwhelming under the preponderance of evidence standard. On a heightened standard, under clear and convincing, the finding would have been different, or should have been different. What difference does it make that the guidelines are all advisory now, anyway? Oh, the district court still needs to follow, accurately apply the guidelines. If the district court inaccurately applies the guidelines, then the sentence is considered unreasonable. And the Gall v. U.S. case, that's what the Supreme Court had stated. And this Circuit has always stated that as well. Well, at least ever since this all came about. I think the case is USA v. Cantrell, which states if the district court misapplies the guidelines, it actually needs to go back to have that correction. If the district court says that this is what I believe is the reasonable sentence, which is essentially what happened here. Yes. He still has to start. He still has to get the guidelines right. Absolutely. The guidelines have to be correctly calculated. And then if he wants to deviate, so be it. But he's got to know what he's dealing with. Right. And regarding, if there aren't any questions regarding the sentencing. And then the jury waiver. Mr. Spengel waived his right to jury. And he argues his waiver was not voluntary or knowing because he suffers from a severe reduced mental capacity. And the law in the Circuit provides if the record establishes there is a suspected presence of mental or emotional instability, the district court is required to conduct a higher or more in-depth colloquy in order to ascertain whether or not the waiver is voluntary or not. In this case, the district court did take some time with Mr. Spengel, but the district court didn't even cover the minimum points that this Circuit has required in the Cochran case. The minimum points are the district court needs to advise the defendant that there is 12 members of the community that propose a jury, that the defendant may take part in jury selection. The jury verdicts must be unanimous. And the court alone decides guilt or innocence. And if you read the record, only two of these points were covered. The district court judge did say that 12 members, told him that 12 members would compose the jury and that the verdict must be unanimous. But he didn't go into the part that he was to take part in jury selection. And if you read it carefully, the district court didn't explain that. He was the one that was going to make the actual decision. We've read the transcript. Thank you. You've more than enough time. You're in the red, and it starts going backwards once you turn. All right. Thank you. Good morning, and may it please the Court. Michael Wilner for the United States. And I apologize in advance. I have a little bit of a spring cold. Very briefly on the jury trial waiver issue. There doesn't appear to be a dispute between the parties as to the legal standard. This Court's opinion in Christensen sets forth that if the district court is on notice of some sort of mental issue or inability of the defendant to make a voluntary and knowing waiver in writing, then there is a requirement to do more and to go into an extended colloquy. The record in this case shows that there was very little in front of the district judge to show that there was some sort of. Well, I mean, the fact that it was a successive district judge can't really be the point. It has to be what's before the district judge. That's a court as a whole, not the particular judge because he's a new judge. I agree, Your Honor. And the psychological report that was presented on appeal to this Court was from a separate criminal case. That was from a 1996 case in front of a different court, a different judge, a different courthouse. What was in the record in the threat case, that is, the prior psychological report was in the bank robbery case in front of Judge Taylor in a different courthouse. What was in front of the district court here was, as I understand the record, solely a competency issue that had been resolved approximately a year before, and no aspect of those reports or the others. Well, because they came out the other way. They said he was competent. That's correct, Your Honor. That is exactly what was in front of the court, is that he was competent to stand trial. When Judge Kaczynski took over the case, and I'm not going to argue that he wasn't on notice of the prior proceeding, what I will say is that there was nothing that was more apparent than that. He had conducted a hearing a previous day with Mr. Spangler. There was nothing apparent. There was no insanity defense in this case. There was no diminished capacity claim in this case. What was in front of the court was the threat case. Regardless, Your Honor, when he came up and submitted the written jury trial waiver, Judge Kaczynski did go much further than just merely accepting the written waiver. And the Court has the whole colloquy. So what about the intent issue? The intent issue. Well, we'll move on to that, Your Honor. Thank you. The Court is ready. But what's troubling me, to repeat it, is really that this guideline is not simply whether there was intent, but whether there was conduct, evidencing intent. And I want to know what that means, because you could have read it the other way. They just could have said enhancement if you find there was an intent to carry it out. But that's not what it says. So what is the significance of what it says? Well, Your Honor, in a very literal sense, Mr. Spangler could not have carried out this threat at the time that he made it because he was in Federal custody. Well, maybe the guideline doesn't apply to him. That's not very helpful. It's not, Your Honor, because some of the cases that are cited by the defense, the Pines case and others, you know, the defendant was apprehended in possession of a weapon. Right. He was stalking someone. That's clearly not the circumstance here, because he was in Lompoc. He was in Federal custody. But what the district court was saying is that he was in Federal custody. But he also hadn't hired anybody to do it, and he hadn't arranged for someone else, as far as we know, to actually get a weapon or anything. I mean, we have some pieces of paper. That's correct, Your Honor. He had contemporaneously with the May 03 threat at the time of the search of his cell, he was in possession of what the Court is aware of, the hit list, the list that identified the probation officer by name and by work address. There was a list of weapons and silencer and ammunition. We know he had his work address because he sent her a letter. So there's nothing bad about that. That can't be enough. I mean, that's just part of the threat. That was part of the threat when the threat was sent, Your Honor. But this was on the hit list itself. And the significance of the hit list identifying people and the weapon list, Your Honor, is that this was a defendant who had 17 criminal convictions, including weapons convictions. This was a man who knew how to get his hands on a weapon, had expressed, at least in the privacy of his own cell and on paper, that he intended to obtain a weapon, that he intended to locate this person, and he had sent the very clear threat to the victim. When he located her, he knew where she worked. I mean, he didn't have to go locate her because he already knew from having worked with her, dealt with her before. Well, there was other information, Your Honor, about how to find a person's residential address if he wanted to carry out this threat. And if he had taken – and the step he took to carry that out was – or down the road of going towards that threat was to find – So what was the conduct? Was the conduct writing the piece of paper? Was there conduct getting the information that was encompassed in the piece of paper? What was the conduct that evidenced intent? Setting down in writing the plan he clearly intended – and this is Judge Kaczynski's finding – that he intended to carry out. That is, he set forth in writing what he intended to do, how he intended to do it, how he intended to locate these people, the weapons he intended to use, and that actually – Well, I mean, that's a bunch of surmises, but perhaps Judge Kaczynski was entitled to make them. I mean, they're not linked. In other words, the list of weapons didn't say for this purpose. It wasn't – it was not that explicit, Your Honor. I recognize that there was a finding made by the district court linking it together. Judge Kaczynski heard this defendant testify at trial. He also heard the victim, who was an experienced probation officer, talk about how much this threat got to her in a way that others had not. And so having listened to both the defendant's testimony about what his conduct was – Well, the defendant's testimony was not very believable in terms of why he had the list and so on. Correct, Your Honor, except for his conclusion that he intended to rattle the cage of this lady and that he had set forth in writing his thoughts on this issue. Well, if his intent was to rattle her cage and not to carry it out, what do we – what do we do with that? I mean, that's the problem. Well, Your Honor, that's – He intended to scare her, but did he intend to shoot her? Well, if he had just intended to scare her, then I submit that the threat would have been just the threat. But when he took the time and trouble to write down a hit list with the probation officer, with the district judge, with the others, when he set down a list of weaponry he wanted to use, it seems to me that that does go beyond just merely rattling somebody's cage or threatening somebody. And Judge Kaczynski made that finding, which is that he had heard the evidence, he had heard this man and the victim, and had come to that conclusion. His – his finding is a little contradictory, isn't it? Then in the next sentence he says, I don't think he would have done it. What do we make of that? Well, Your Honor, the guideline enhancement is not that there was a likelihood that it would have been carried out. The text of the guideline itself is engaged in any conduct evidencing an intent. And so it seems that it's a lower threshold. Was there conduct towards the carrying out the threat, as opposed to the likelihood that the threat would be accomplished? This defendant was within a few weeks of being released from Federal custody. You know, it is, of course, some amount of supposition as to how far he would have gone, what he would have done. But he had made a number of explicit threats. He had taken the time and trouble to do that. Kagan. But there was no reliance on the earlier letter. How does that prove – which was fairly substantial, actually, in terms of the way the district court articulated his reasoning. What – how is that pertinent? First of all, is the conduct evidencing a threat, an intent? Is it conduct at all? And second of all, how does it evidence the intent any more than the letter that he was convicted of evidences the intent? Well, Your Honor, in the Hines case from this Court, the Court said that you should take the blinders off. I think that was the phrase that was used, which is to look at not just the microcosm of the literal threat or the specific threat, but to take a broader view as to what is going on and what evidence supports this. I recognize that the earlier threat was a couple of years before. However, it does show that, in Judge Kaczynski's words, that this defendant was obsessed with the probation officer. When he was going to be released, it's unlikely that that probation officer would have been supervising him because he'd indicated he wanted to go to a different district. However, over the course of two years of being in Federal custody, he continued to think about this woman. He continued to write to her on three occasions, including one letter that was not charged, but evidence was presented to the district court on this. And so it is relevant to the bigger picture of who this defendant was, his extensive criminal history, his escalating criminal history, which Judge Kaczynski noted that, although some of his offenses were clearly petty and clearly minor, the most previous one was a bank robbery for which he had received a five-year sentence from Judge Taylor. He had failed to abide by the terms of his supervision. And the judge's findings at – in imposing the final sentence was that this was a dangerous person. Had he ever actually hurt somebody? There was an assault conviction in his record, Your Honor, and there were two weapons violations. I don't believe that there is anything in the record that showed that he had used those weapons, but he had been convicted twice of being a felon in possession of a weapon. But let's take – you mentioned Hines, right? Yes, Your Honor. And this is what's troubling me. Hines says the purpose of the enhancement is clear. Defendants who act on their threats are more dangerous – who act on their threats are more dangerous and, therefore, deserve more punishment. And that – the critical issue should not be the timing of the conduct. And there, the guy went to Washington with a gun. So that's a very different concept than the one that you're suggesting. It's people who act on their – on their threats. This guy didn't act on his threats. Well, Your Honor, I don't think he did. I think he was kind of thinks some more about it. Well, he did more than think, Your Honor. He had committed his thoughts to writing and appeared to be setting forth a plan. And the plan – Not a very distinct one, to put it violently. Well, maybe – and maybe not a very sophisticated one. I mean, he already had the address, so the address doesn't tell you anything. And beyond that, it was what? It was an earlier threat, and it was – And it was – It was a list of weapons which wasn't linked to this. And what else? Well, I don't know that I can say that, Your Honor. I mean, his list of weapons – This guy was a bank robber. And somebody was dealt with weapons convictions. There's certainly good reason to think he would be interested in getting guns, quite aside from whatever he meant to do with her. Well, Your Honor, respectfully, I think that's a factual conclusion, and the district judge came to a different fact – Well, that may be. A different factual conclusion, that this was timed with the threat to Ms. Allard, the probation officer, that this was a written plan to carry out the hit on Ms. Allard. I see my time is up. I thank you, Your Court. Thank you. The matter disargued is submitted for decision. We'll hear the next case, United States v. Perry.
judges: Schroeder, Silverman, Berzon